UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>KIMBERLY PINE KITTS,<br><br>    Defendant. | Civil Action No. _____<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendant Kimberly Pine Kitts ("Kitts" or "Defendant"), alleges as follows:

## PRELIMINARY STATEMENT

1. From April 2004 through November 2017, the Defendant was employed as an investment adviser representative at a dually-registered broker-dealer and investment adviser firm ("Firm"). Over the course of several years she engaged in various schemes to defraud her clients. These schemes included: (1) forging withdrawal requests and misappropriating clients' variable annuity funds; (2) forging wire and check requests and misappropriating clients' brokerage account funds; and (3) misleading a client to withdraw funds from a retirement account and secretly directing those funds to the Defendant's bank account.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to Sections 209(d), 209(e), and 214 of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-9(d), 80b-9(e) and 80b-14]

and Sections 21(d)(3), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)(3), 78u(e), and 78aa].

3. Venue in this District is proper pursuant to Section 214 of the Advisers Act [15 U.S.C. § 80b-14] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because a substantial portion of the conduct alleged in this complaint occurred within the District of Massachusetts.

4. In connection with the conduct alleged in this Complaint, the Defendant, directly or indirectly, has made use of the means or instrumentalities of interstate commerce or the mails in connection with the acts, transactions, practices, and courses of business alleged in this complaint.

## DEFENDANT

5. Kitts, age 51, is a resident of Orleans, Massachusetts. In April 2004 she was employed by the Firm as a registered representative and investment adviser representative in one of the Firm's branch offices in Massachusetts doing business as ("d/b/a") Marquis Consulting, LLC ("Marquis"), an entity she created and wholly controlled.

6. In addition to operating as a d/b/a, Marquis purportedly offered tax and business valuation services, and Kitts performed tax work for several of her advisory clients through Marquis. Kitts represented that she was a Certified Public Accountant, and even told at least two of her advisory clients that she held a Ph.D. in economics, neither of which is true.

## FACTUAL ALLEGATIONS

7. Beginning in 2011, the Defendant engaged in at least three separate schemes to misappropriate the assets of her clients in order to pay her personal expenses. She directed these client assets to two bank accounts for Marquis, although the majority of misappropriated funds

were placed in one account (the "Marquis Account"). In each instance, the Defendant exploited her fiduciary relationship with an advisory client, made intentional misstatements, and engaged in deceptive conduct in order to obscure her wrongdoing.

### *Misappropriation of Clients' Variable Annuity Funds*

8.     Some of the Defendant's advisory clients purchased and held a type of financial product known as a variable annuity. A variable annuity is a contract between an investor and an insurance company, under which the insurance company agrees to make periodic payments to the investor, beginning either immediately or at some future date. From July 2011 through June 2013, the Defendant made unauthorized withdrawals from the variable annuities of six of her advisory clients (collectively, "the Annuity Clients"). The Defendant submitted withdrawal forms to two insurance companies on which she forged her clients' signatures and directed the funds to two of her Marquis bank accounts for her personal use. In total, the Defendant made 24 unauthorized withdrawals of client funds totaling $962,654.

### *Misappropriation of Clients' Brokerage Account Funds*

9.     In June 2013, the Defendant began stealing money from three of her clients' brokerage accounts. Client A is in her early-50s and was a client of the Defendant for seven years. Clients B and C are a retired couple who were clients of the Defendant for 12 years. Clients B and C were also Annuity Clients from whom the Defendant had misappropriated $481,401.85 in variable annuity funds.

10.    On June 24, 2013, the Defendant forged Client A's signature on an Outgoing Federal Fund Wire Request to the Firm with instructions to wire $75,000 from Client A's brokerage account to the Marquis Account "for further credit" to Client A. The Defendant did

not "credit" or use these funds for the benefit of Client A, but instead used them for her own personal purposes.

11. In an apparent attempt to avoid questions about transferring Client A's funds to a third-party account, *i.e.*, the Marquis Account, the Defendant submitted fake documentation to the Firm showing that Client A was the owner of a New York-based company, Marquis, LLC. In fact, Marquis, LLC was non-existent. Client A never formed any such company nor had any knowledge of the Defendant's representations to the Firm.

12. After the initial $75,000 transfer of Client A's funds, the Defendant submitted several additional wire requests forged with Client A's signature. By November 2013, the Defendant established a standing authorization through additional forgeries of Client A's signature to allow her to transfer money from Client A's account to the Marquis Account without a written request. The Defendant transferred a total of $355,636.87 from Client A's brokerage account to her Marquis Account in 2013. The steady conversion of funds occurred over the next four years in the following amounts: $763,000 in 2014; $357,250 in 2015; $530,000 in 2016; and $9,000 in 2017. In total, from 2013 to 2017 the Defendant made 56 unauthorized withdrawals, misappropriating $2,014,887 from Client A's brokerage account.

13. After Client A's funds were nearly depleted from Client A's brokerage account by early 2017, the Defendant returned to stealing funds from Clients B and C. In May 2017, the Defendant forged a written request for a $125,000 check from Clients B and C's brokerage account payable to Marquis LLC. The Defendant deposited this check into her Marquis Account.

*Misleading her Client to Withdraw Money from her Retirement Account*

14. In June 2017, the Defendant advised Client B that she should move $200,000 from her individual retirement account ("IRA") to the managed cash account she shared with Client C to pay some taxes. The Defendant tricked Client B into signing signature pages for IRA distributions, while concealing the directions for delivery of funds. Unbeknownst to Clients B and C, the Defendant directed the $200,000 distribution to her Marquis Account.

*The Defendant's Cover-Up*

15. In August 2017, Client A asked the Defendant for all of her account statements, not yet suspecting any wrongdoing. When the Defendant failed to provide her statements, Client A's lawyer contacted the Firm. In response, the Firm initiated an investigation. After seeing the large number of wire transfers from Client A's brokerage account to the Marquis Account, the Firm asked the Defendant to provide the Marquis Account monthly statements. To hide evidence of the unauthorized withdrawals from Client A's brokerage account, the Defendant electronically altered the Marquis Account monthly statements to change the sources and amounts of the deposits into that account.

16. In addition, the Defendant told the Firm that Marquis, LLC was created by Client A and named after the Defendant's company because of their close friendship. In an attempt to bolster this falsehood, the Defendant created fake Schedule C tax forms for Marquis, LLC for 2014-2016 and emailed them to the Firm.

17. By early November 2017, the Firm concluded that the Defendant misappropriated funds from Client A's account. The Firm terminated the Defendant on November 15, 2017.

*Tolling Agreement*

18. Kitts entered a tolling agreement with the Commission for the period March 1, 2018 through December 1, 2018. This agreement tolled the running of any limitations period or

any other time-related defenses to any claims alleged in the Complaint for a period of nine months.

## CLAIMS FOR RELIEF

**First Claim: Violations of Sections 206(1) and 206(2) of the Advisers Act by Defendant**

19. The Commission incorporates and realleges here paragraphs 1 through 18, above.

20. By engaging in the conduct described above, the Defendant, while acting as an investment adviser representative, directly or indirectly, by use of means or instrumentalities of interstate commerce or the mails:

    a. employed devices, schemes, or artifices to defraud clients; and,

    b. engaged in transactions, practices, or courses of business which operate as a fraud or deceit upon clients.

21. By reason of the foregoing, the Defendant directly or indirectly, singly or in concert, has violated, and unless enjoined will continue to violate, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

**Second Claim: Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder by Defendant**

22. The Commission incorporates and realleges here paragraphs 1 through 18, above.

23. By engaging in the conduct described above, the Defendant, directly or indirectly, by use of means or instrumentalities of interstate commerce or the mails, or of a facility of a national security exchange, with scienter:

    a. employed devices, schemes, or artifices to defraud;

      b.    made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

      c.    engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, in connection with the purchase or sale of securities.

24. By reason of the foregoing, the Defendant directly or indirectly, singly or in concert, has violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

A. Enter an injunction permanently restraining and enjoining the Defendant from violating, directly or indirectly, the laws alleged in this Complaint to have been violated.

B. Order the Defendant to disgorge her ill-gotten gains received as a result of conduct alleged in this complaint during the period March 1, 2013 to November 2017, in an amount according to proof, plus prejudgment interest thereon.

C. Order the Defendant to pay civil money penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. §§ 80b-9(e)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

D. Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

E. Grant such other and further relief as this Court may deem just, equitable, and necessary.

## JURY DEMAND

The Commission hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

//s// Gretchen Lundgren

Gretchen Lundgren (Mass. Bar No. # 644742)
    Senior Enforcement Counsel
Martin F. Healey (Mass. Bar No. # 227550)
    Regional Trial Counsel
Michele T. Perillo (Mass. Bar No. # 629343)
    Assistant Director, Enforcement

Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch Street
Boston, MA 02110
(617) 573-4578 (Lundgren direct)
(617) 573-4590 (fax)
LundgrenG@sec.gov (Lundgren email)

Dated: July 19, 2018